AO 106 (Rev. 04/10) Application for a Search Warrant                    AUTHORIZED AND APPROVED/DATE: s/ Nick Coffey 3/4/2024

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Premises known as 3804 South Brookline, Avenue,<br>Oklahoma City, Oklahoma, the surrounding curtilage,<br>and any vehicles, garages, and outbuildings thereon | )<br>)<br>)<br>)<br>)<br>)    Case No. M-24- *197* -SM |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____ Western _____ District of _____ Oklahoma _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Drug Conspiracy |
| 21 U.S.C. § 841(a)(1) | Manufacturing, possessing, distributing and/or selling of controlled substances |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Christopher Donovan, Special Agent (HSI)
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/4/24

_____
*Judge's signature*

City and state: Oklahoma City, Oklahoma

SUZANNE MITCHELL, U.S. Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF A RESIDENCE LOCATED AT 3804 SOUTH BROOKLINE AVE., OKLAHOMA CITY, OKLAHOMA** | Case No. M-24-197-SM <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Christopher Donovan, being duly sworn, depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for an anticipatory warrant to search the premises known as 3804 South Brookline Avenue, Oklahoma City, Oklahoma 73119, hereinafter "**PREMISES**," further described in **Attachment A**, for the items specified in **Attachment B** hereto, which constitute instrumentalities, fruits, and evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846, including possession and conspiracy to possess with intent to distribute a controlled substance.

2.    I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the U.S. who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been employed as a Homeland Security Investigations (HSI) Special Agent since January 2023.    I am presently assigned to the HSI office in Oklahoma City, Oklahoma (hereinafter referred to as HSI Oklahoma City).    Prior to my federal law enforcement

service, I was employed as a police officer with the Houston Police Department for six years, where I conducted numerous criminal investigations including, but not limited to, violent crimes and narcotics offenses.

3.    I have been involved in a wide variety of investigative matters, including those investigating the unlawful importation and distribution of controlled substances in violation of 21 U.S.C. §§ 952 and 841(a)(1), respectively.  I have received approximately 24 weeks of specialized training at the Federal Law Enforcement Training Center in the enforcement of federal laws.  I have arrested individuals who have been involved and have personal knowledge of transporting and concealing controlled substances. I have testified in judicial proceedings concerning the prosecution for violations of laws related to the smuggling and trafficking of contraband, including controlled substances.  I have participated in the execution of search and arrest warrants, conducted physical surveillance, and analyzed records documenting the purchase and sale of illegal drugs. I have also researched subjects and have spoken with other local and federal law-enforcement officers regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute drugs. Through my training and experience, I have become familiar with some of the manners in which illegal drugs are imported, distributed, and sold, as well as the methods used by drug smugglers to disguise the source and nature of their profits. In light of my training and experience, I know the following:

      a.  I am aware that drug dealers frequently keep assets, records, and documents related to their drug distribution organizations, and monies derived from the

2

sale of illegal drugs, in their own residences, as well as in safe houses where they are not easily detectable by law enforcement officials conducting investigations. They often use these places to further drug trafficking activities and store associated items to avoid detection by law enforcement. Further, I am aware that these individuals will frequently maintain these houses in the names of other individuals, also to avoid detection by law enforcement agencies;

b.  I am aware that even though relevant assets, telephones, and properties are often held in alias or third-party names, drug dealers continue to use and exercise dominion and control over them;

c.  I am aware that drug dealers often maintain on-hand quantities of currency and drugs in order to finance their ongoing drug business;

d.  I am aware that drug dealers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances, even though such documents may be in code. It is particularly common that individuals engaged in drug trafficking will keep ledgers related to their illegal activity because drug dealers commonly "front" drugs (provide controlled substances on consignment) to their clients, and are frequently "fronted" drugs by their own sources of supply as part of their dealing operations;

3

e. I am aware that the aforementioned books, records, receipts, notes, ledgers, etc., are commonly maintained where the drug dealers have ready access to them, i.e., homes, automobiles, businesses and safe houses, and that the most common place for these items to be located is at their primary residence;

f. I am aware that drug dealers will frequently keep records, notes, ledgers, contact lists, and other evidence of their drug trafficking on cellular phones and electronic devices, and that they often keep such cellular phones or electronic devices on their person or in the properties that they control. Further, I am aware that drug dealers will often have multiple cellular phones and will frequently use more than one cellular phone to help conduct their drug trafficking. I am also aware that drug dealers will use computers and tablets to further their drug trafficking through the use of digital communication, including, but not limited to, e-mail and instant messaging;

g. I am aware that it is common for drug dealers to conceal contraband, proceeds of drug sales, and records of drug transactions, drug sources and drug customers, in secure locations within residences, garages, storage building, safes, offices, and safety deposit boxes for ready access, and also to conceal such items from law enforcement agencies;

4

h.  I am aware that when drug dealers acquire large sums of proceeds from the sale of drugs, they attempt to legitimize their profits to include co-mingling profits with profits earned from legitimate business activities;

i.  I am aware that to accomplish these goals, drug dealers utilize, among other things, banks and their attendant services, securities, cashier checks, money drafts, letters of credit, brokerage houses, real estate companies, shell corporations, and business fronts;

j.  I am aware that drug dealers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers for their associates in the drug dealers organization, even if said items may be in code;

k.  I am aware that drug dealers commonly take photographs (or cause photographs to be taken) of themselves, their associates, their property and their products, and that these dealers usually maintain these photographs in their possession and at their residence;

l.  I am aware that firearms are commonly used by drug dealers to protect their inventory and currency.

4.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5

5.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have been committed and will be committed at the **PREMISES** by unknown subject(s). There is also probable cause to believe that the location information described in **Attachment B** will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

6.    The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

### PROBABLE CAUSE

7.    On February 23, 2024, Special Agents and Task Force Officers (TFO) assigned to HSI Louisville were conducting interdiction operations at the UPS (United Parcel Service) World Port, located in Louisville, Kentucky.  TFOs located an expedited service parcel being shipped from a known source region of narcotics distribution (southern California) to "Cheryl Newman" at the **PREMISES**, located in the Western District of Oklahoma.  TFOs conducted a visual and physical examination of the parcel's exterior, which based upon their training and experience, presented indicators of a parcel containing narcotics or dangerous drugs. United States Customs and Border Protection (CBP) Canine Officer Daniel Melvin, along with his drug-sniffing canine "Gas" (K9 Gas), conducted an external examination of the package addressed to the **PREMISES**. K9 Gas is trained and certified to inspect for the presence of drug odors and is currently

6

certified to do so. CBP Officer Melvin advised that K9 Gas indicated a positive alert on the package for the odor of a controlled substance. Due to the positive K9 alert for narcotics, the package was detained for further investigation. On February 26, 2024, TFO's applied for and received a state search warrant authorizing them to open and search the parcel. On February 27, 2024, the warrant was executed, at which time the parcel was opened and found to contain approximately 1.07 kilograms of a white powdery substance that field tested positive for fentanyl.

8.    Using law enforcement indices, open-source databases, and physical surveillance, HSI Oklahoma City agents were unable to locate anyone at the **PREMISES** address by the name of "Cheryl Newman".

9.    Based on my training and experience, I know, first, that drug traffickers will often list false or fictitious names for the shipper and addressee when mailing drugs, and second, that this is to avoid detection by law enforcement or being associated with the shipment of controlled substances.

10.    Law enforcement has removed all of the actual fentanyl from the package prior to the anticipated delivery and replaced it with a sham substance that looks like fentanyl but is not.

## CONDITIONS PRECEDENT TO EXECUTION OF THE SEARCH WARRANT

11.    In the next ten days, HSI Oklahoma City Special Agents, in coordination with local law enforcement partners, will deliver the package to the **PREMISES**. A sensor will be inserted in the package to indicate when it has been opened. A law enforcement officer will deliver the package. Once the package is taken into the

7

residence, agents will either wait until the inserted sensor indicates the package has been opened or wait a reasonable time (approximately three minutes) for the package to be opened, unless within that three-minute time frame, some person(s) attempt(s) to remove the package from the residence.  After any of the foregoing anticipated or triggering events occur, agents will then execute the anticipatory search warrant.

## CONCLUSION

12.     I submit that this affidavit supports probable cause for a search warrant to search the **PREMISES** described in Attachment A to seek and seize the items described in Attachment B.

Respectfully submitted,

CHRISTOPHER DONOVAN
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me on March 4, 2024.

SUZANNE MITCHELL
United States Magistrate Judge

# **Attachment A**

*Property to be searched*

The property to be searched is located at 3804 South Brookline Avenue, Oklahoma City, OK 73119. The primary located to be searched is further described as a single-story home with off-white siding and dark trim to include all appurtenances, outbuildings, and vehicles located on the property. The residence is as shown below:



## **Attachment B**

*Property to be seized*

Evidence relating to violations of 21 U.S.C. § 841(a)(1), possession with intent to distribute a controlled substance, and 21 U.S.C. § 846, conspiracy to commit possession with intent to distribute a controlled substance, including methamphetamine, a Schedule II controlled substance, specifically:

    a. Books, records, receipts, notes ledgers and other papers relating to the transportation, ordering, purchase and distribution of controlled substances;

    b. Paper, tickets, notes, schedules, receipts and other items relating to domestic and international travel;

    c. Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks, receipts, passbooks, bank checks, safe deposit box keys and other items evidencing the obtaining, secreting, transfer and/or expenditure of money;

    d. United States Currency, precious metals, jewelry, and financial instruments, including stocks and bonds in amounts indicative of the proceeds of illegal narcotics trafficking;

    e. Photographs, in particular, photographs of co-conspirators, of assets and/or controlled substances, in particular methamphetamine;

f.  Indicia of occupancy, residency and/or ownership of the premises described above including, but not limited to, utility and telephone bills, canceled bills, canceled envelopes, and keys;

g.  Firearms, magazines, ammunition, and any records relating to the purchase or transfer of firearms or firearm components;

h.  Controlled substances and related paraphernalia;

i.  Receipt for items evidencing expenditures in amounts indicative of the proceeds of drug distribution including, but not limited to, clothing, furniture, electronic equipment, weapons, and vehicles;

j.  Vehicles used to facilitate the smuggling of illegal narcotics and or purchased with illegal narcotic proceeds;

k.  Cellular phones used as a method of communicating during narcotic trafficking events that often contain co-conspirator's telephone numbers in memory and are often used by large-scale controlled substances traffickers as a tool of the trade;

l.  Computer hardware, software, peripheral devices, documentation, data security devices and electronic storage devices which may contain items described above to the extent such equipment and devices are not otherwise subject to seizure, agents shall promptly arrange for any stored electronic

2

information to be copied and preserved as evidence so that the equipment and devices may be returned within a reasonable time;

m. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

n. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

o. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

p. evidence of the lack of such malicious software;

q. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

3

r.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

s.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

t.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

u.  evidence of the times the COMPUTER was used;

v.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

w. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

x.  records of or information about Internet Protocol addresses used by the COMPUTER;

y.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

z.  contextual information necessary to understand the evidence described in this attachment.

4

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.